| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VS. | NO. 18-32 |
| MUHAMMAD KALEEM ARSHAD, ET AL. | SECTION "E" (1) |

## ORDER AND REASONS

This is a criminal action stemming from an alleged scheme to commit healthcare fraud and to pay and receive illegal healthcare kickbacks. Defendants Dr. Muhammad Kaleem Arshad, Dr. Padmini Nagaraj, and Mr. Joseph A. Haynes have moved to dismiss the Indictment.[1] The United States opposes the motion.[2] The questions presented are two-fold. First, the Court must determine whether the Indictment must be dismissed for failing to state an offense.[3] If not, the Court must determine whether the Indictment should nevertheless be dismissed for alleged misstatements of law before the grand jury.[4] Having held an oral hearing on the motion, the Court is ready to rule.[5] For the reasons that follow, the motion is **DENIED** in its entirety.

## BACKGROUND

Defendants were indicted by a federal grand jury on February 8, 2018 for ten counts of health care fraud.[6] The Indictment alleges that, beginning around September 2010 and continuing through in or around April 2015, Defendants knowingly and willfully

---

[1] R. Docs. 34, 43, 55. Dr. Arshad filed a reply to the Government's opposition. R. Doc. 54.
[2] R. Doc. 42.
[3] FED. R. CRIM. P. 12(b)(3)(B)(v).
[4] FED. R. CRIM. P. 12(b)(3)(A)(v).
[5] R. Doc. 64.
[6] R. Doc. 1. When analyzing a motion to dismiss an indictment, the Court accepts the allegations in the indictment as true. *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998).

engaged in a scheme to fraudulently bill Medicare for home health care services in exchange for bribes and kickbacks.[7] According to the Indictment, Defendants executed the conspiracy by:

> (a) referring home health care that was not medically necessary for psychiatric patients who were not homebound so that [Home Health Agencies ("HHAs")], . . . could submit false and fraudulent claims to Medicare;
> (b) receiving kickbacks and bribes to refer such services to HHAs . . . ;
> (c) concealing the receipt of kickbacks and bribes, and the submission of false and fraudulent claims to Medicare; and
> (d) diverting proceeds of the fraud for the personal use and benefits of the defendants and their co-conspirators.[8]

Specifically, the Government alleges Defendants Mr. Haynes, Dr. Arshad, and Dr. Nagaraj worked together at "Company A," which owned and operated a number of behavioral healthcare facilities in Louisiana.[9] Company A provided, *inter alia*, outpatient psychiatric services to mentally ill Medicare beneficiaries.[10]

The Indictment alleges Defendant Mr. Haynes served as a marketer for Company A.[11] Kim Ricard, a co-conspirator identified in the Indictment, recruited Medicare beneficiaries to HHAs.[12] These HHAs would pay Ms. Ricard for each Medicare patient she referred to them.[13] Mr. Haynes allegedly had access to Company A's patients and their Medicare information. The Indictment alleges that, using this information, Mr. Haynes worked with Ms. Ricard to procure beneficiaries for the HHAs.[14]

---

[7] R. Doc. 1 ¶ 22.
[8] *Id.*
[9] *Id.* ¶29(a)–(c).
[10] *Id.* at ¶ 14.
[11] *Id.* at ¶ 17.
[12] *Id.* Ms. Ricard and her co-conspirator Milton Diaz were indicted separately. *See United States v. Diaz*, 15-232 (E.D. La.). Mr. Diaz pleaded guilty in July 2017, E.D. La. No. 15-232, R. Doc. 179, and Ms. Ricard proceeded to trial in September 2017, E.D. La. No. 15-232, R. Doc. 210. Ms. Ricard was found guilty, E.D. La. No. 15-232, R. Doc. 112, and sentenced on January 4, 2018, E.D. La. No. 15-232, R. Doc. 243.
[13] R. Doc. 1 at ¶¶ 18, 22, 23.
[14] *Id.* at ¶ 23(f).

Ms. Ricard and Mr. Haynes allegedly executed the conspiracy with the help of Defendants Dr. Arshad and Dr. Nagaraj, both of whom were psychiatrists at Company A with the authority to refer patients to HHAs.[15] According to the Indictment, Mr. Haynes brokered arrangements between Dr. Arshad and Dr. Nagaraj and the local HHAs,[16] whereby Defendants would receive a kickback for each patient they referred to home health. The Indictment alleges Defendants would refer patients who did not require home health services to HHAs and would order those patients to undergo medically unnecessary treatment. Defendants allegedly received kickbacks by posing as medical directors for the home health clinics.

The Indictment alleges Dr. Arshad and Dr. Nagaraj referred Company A's beneficiaries to home health care, even though the doctors knew that the beneficiaries did not qualify for the services.[17] Finally, the Indictment alleges Defendants made home health care referrals knowing that the HHAs would provide medically unnecessary home health services to these Medicare beneficiaries and ultimately submit claims for reimbursement to Medicare, the proceeds of which would then be distributed to Defendants.[18]

The first six counts of the Indictment allege Defendants Dr. Arshad and Dr. Nagaraj committed fraud when they falsely certified patients for medically unnecessary home health care in violation of 18 U.S.C. §§ 1347 and 2. Counts Seven through Ten charge all three Defendants with soliciting and receiving kickbacks and bribes in exchange for

---

[15] *Id.* at ¶ 15, 16, 23.
[16] *Id.* at ¶ 23(d).
[17] *Id.* at ¶ 23(c).
[18] *Id.*

referring Medicare patients to home health in violation of 42 U.S.C. §§ 1320a-7b(b)(1)(A)–(B) and 18 U.S.C. § 371.

## DISCUSSION

The arguments for dismissal are predicated on an allegedly erroneous definition of "homebound," which Defendants contend was "incorporated into each and every count" of the Indictment.[19] Specifically, Defendants point to Section (A)(6) of Count 1, wherein the Indictment states "a patient qualified for home health care benefits only if: the patient was confined to the home, also referred to as 'homebound'";[20] and Section (A)(9) of Count 1, wherein the Indictment states "the basic requirement that a physician certify that a beneficiary was confined to the home or was homebound was a continuing requirement for a Medicare beneficiary to receive home health care benefits."[21] According to Defendants, these statements are legally erroneous, as the Medicare Act specifically provides that:

> While an individual does not have to be bedridden to be considered "confined to his home", the condition of the individual should be such that there exists a normal inability to leave home and that leaving home requires a considerable and taxing effort by the individual. Any absence of an individual from the home attributable to the need to receive health care treatment, including regular absences for the purpose of participating in therapeutic, psychosocial, or medical treatment in an adult day-care program that is licensed or certified by a State, or accredited, to furnish adult day- care services in the State shall not disqualify an individual from being considered to be "confined to his home". Any other absence of an individual from the home shall not so disqualify an individual if the absence is of infrequent or of relatively short duration.[22]

Thus, according to Defendants, because "beneficiaries need not be 'bedridden'" to be "considered 'confined to the home'" and leaving the home "for short durations" does not

---

[19] R. Doc. 34-1.
[20] R. Doc. 1 at ¶ 6(a).
[21] *Id.* ¶ 9.
[22] 42 U.S.C. § 1395n(a)(2)(A).

disqualify a beneficiary for homebound services, the Indictment's definition of "homebound" is materially false.

Defendants argue the Court should dismiss the Indictment for failing to state an offense. Alternatively, they argue the Government's presentation to the grand jury was legally deficient, and therefore, the entire Indictment should be dismissed with prejudice. Defendants also request the Court release the materials and testimony presented to the grand jury. The Court addresses these arguments in turn.

## I. Dismissal of Indictment for Failing to State an Offense

Defendants argue the Indictment must be dismissed as facially deficient for failing to state an offense. Federal Rule of Criminal Procedure 7 requires that an indictment contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged."[23] Rule 12(b)(3)(B) is the procedural mechanism for challenging a defect in the indictment prior to trial.[24] To be legally sufficient, an indictment need only (1) enumerate each element of the charged offense, (2) fairly inform the defendant of the charges filed against him, and (3) provide the defendant with a double jeopardy defense against future prosecution.[25] For purposes of this analysis, the Court accepts the allegations in the indictment as true.[26]

---

[23] FED. R. CRIM. P. 7(c)(1). During the oral hearing, Defendants argued the Indictment against them is a so-called "speaking indictment." According to Defendants, when a prosecutor decides to issue a speaking indictment, one that goes beyond a "clear simple statement," the sufficiency of the indictment is not evaluated under the Rule 7 standard, but rather a court must evaluate it under a heightened pleading standard pursuant to Rule 12. Defendants did not offer any case law to support this assertion, and the Court, through its own research, has uncovered none.

[24] "Motions that must be raised before trial. The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits: a defect in the indictment or information, including . . . failure to state an offense." FED. R. CRIM. P. 12(b)(3)(B)(v).

[25] *United States v. Gaytan*, 74 F.3d 545, 551 (5th Cir. 1996).

[26] *Hogue*, 132 F.3d at 1089.

As an initial matter, Defendants contend that, because the definition of homebound is incorrect and that incorrect definition included in Count One was incorporated into each Count against them, all ten counts against them must be dismissed.[27] The offenses charged in Counts Seven through Ten of the Indictment allege violations of the Federal Anti-Kickback Statute, which criminalizes any payment made or received in exchange of the referral of a Medicare beneficiary, regardless of the beneficiary's homebound status.[28] As a result, the definition of "homebound" has no relevance to these Counts, as Defendants may be found guilty even if they referred beneficiaries who qualified for home health services, assuming they received an unlawful kickback for the referral.[29] These counts enumerate each element of the charged offense, fairly inform Defendants of the charges against them, and provide them with a double jeopardy defense against future prosecution. Defendants' motion with respect to Counts Seven through Ten is **DENIED**.

In Counts One though Six, the Indictment charges Dr. Arshad, and Dr. Nagaraj with one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 and five counts of health care fraud in violation of 18 U.S.C. § 1347. This Court is familiar with indictments alleging defendants committed health care fraud by referring unqualified patients to home health services.[30] The text of the Indictment against

---

[27] In support of this argument, during the oral hearing of Defendants' motion, defense counsel argued that, assuming the Court finds the definition of homebound is legally erroneous, thereby warranting dismissal of Counts One through Six, the Court need not evaluate whether there was a prejudicial spillover effecting Counts Seven through Ten, as the Government incorporated by reference the allegedly incorrect definition of homebound into Counts Seven through Ten. Defendants essentially argue that, in the event the Court dismisses Counts One through Six, Counts Seven through Ten must also be dismissed without further analysis. Defendants offer no legal support for this theory, and the Court's research also did not reveal any.
[28] *See, e.g.*, *United States v. Greber*, 760 F.2d 68–69, 71 (3d Cir. 1985) ("The text refers to 'any remuneration.' That includes not only sums for which no actual service was performed but also those amounts for which some professional time was expended . . . Even if the physician performs some service for the money received, the potential for unnecessary drain on the Medicare system remains.").
[29] *Id.*
[30] *See United States v. Crinel*, No. 15-61, 2015 WL 3447120, at *1 (E.D. La. May 28, 2015).

Defendants in this case is substantially similar to other indictments brought in this district.[31] The definition of homebound in this case, and in similar indictments, tracks the language of the statute.

"To support a conviction under 18 U.S.C. § 1349, the Government must prove beyond a reasonable doubt that: '(1) two or more persons made an agreement to commit health care fraud; (2) that the defendant knew the unlawful purpose of the agreement; and (3) that the defendant joined in the agreement . . . with the intent to further the unlawful purpose.'"[32] "To prove health care fraud, in violation of 18 U.S.C. § 1347, the Government must show that the defendant knowingly and willfully executed 'a scheme or artifice—(1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises,' any health care benefit program's money in connection with the delivery of or payment for health care services."[33]

Defendants do not attack an essential element of any of the Counts against them. Instead, Defendants' sole complaint is that the definition of homebound included in the Indictment does not clarify that leaving the home "for short durations" does not disqualify a beneficiary for homebound services. Defendants fail to actually identify a single misstatement of law in the Indictment—the Indictment's definition of "homebound" tracks the language used in the statutes governing Part A of the Medicare program.[34]

As the Government points out, Defendants can be found guilty of the allegations in Counts One through Six, even if the patients they referred to home health care were in

---

[31] *See, e.g., id.* In *Crinel*, the indictment defined "homebound" verbatim to the indictment at issue in this case. *See United States v. Crinel*, No. 15-61, 2015 WL 3755896 (E.D. La. June 16, 2015).
[32] *United States v. Ganji*, 880 F.3d 760, 767 (5th Cir. 2018) (quoting *United States v. Eghobor*, 812 F.3d 352, 362 (5th Cir. 2015)).
[33] *Id.* at 777 (quoting *United States v. Imo*, 739 F.3d 226, 235–36 (5th Cir. 2014)).
[34] *Compare* R. Doc. 1 at ¶ 6, *with* 42 U.S.C. § 1395f(a)(2)(C).

fact eligible for those services.[35] Counts One through Six of the Indictment allege Defendants knowingly and willfully conspired to defraud Medicare by making false statements about their patients' functional limitations. These allegations refer to specific statements; for example, Defendants would certify that a certain patient had trouble using the bathroom or walking. Moreover, the Indictment alleges Defendants knowingly and willfully ordered home health services that were excessive, unnecessary, and duplicative of the care that these patients were already receiving. Those allegations do not depend on Medicare's definition of what it means to be "homebound." "Simply put, even if a patient is actually homebound, a physician may not order unnecessary or duplicative in-home services for the patient. Thus, the allegations that the Defendants ordered unnecessary and duplicative services support the fraud counts, regardless of whether a patient was 'confined to the home.'"[36]

Because the Indictment's definition of "homebound" tracks the statute, the Court finds the Indictment is not facially deficient.[37] The Court concludes the Indictment sufficiently alleges "the essential facts constituting the offense charged,"[38] enumerates each element of the charged offenses, fairly informs Defendants of the charges against them, and provides them with a double jeopardy defense against future prosecution. Defendants' motion based on Rule 12(b)(3)(B) is **DENIED**.

## II. Dismissal of Indictment with Prejudice for Grand Jury Misconduct

Having determined the Indictment is not facially deficient, the Court must now determine whether dismissal is appropriate under its supervisory powers. Again pointing

---

[35] R. Doc. 1 at ¶ 23(h).
[36] R. Doc. 42 at 10.
[37] *See United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007) (holding that an indictment that tracks the language of a statute is typically sufficient).
[38] FED. R. CRIM. P. 7(c)(1).

to the way in which the Indictment defines "homebound," Defendants argue the Indictment must be dismissed for including a "material misstatement of law." Defendants also ask the Court to review the proceedings before the grand jury, alleging that, in addition to including an erroneous definition of homebound in the Indictment, the Government also likely articulated an incorrect definition of homebound during the grand jury's proceedings. The Court reiterates its finding that Defendants have failed to point to any portion of the Indictment that contains a misstatement of law. Thus, the Court will not dismiss the Indictment on this basis and will consider only Defendants' request that the Court order the transcript of the grand jury proceeding be released.

A federal court has supervisory power to safeguard the integrity of the grand jury process,[39] but the limits of that power are narrowly circumscribed.[40] The supervisory power should be used "only in extraordinary situations."[41] Grand jury proceedings enjoy the presumption of regularity, and this presumption "may be dispelled only upon particularized proof of irregularities in the grand jury process."[42] The party seeking disclosure of the proceedings before the grand jury bears the burden of proof and must show: (1) "the material they seek is needed to avoid a possible injustice," (2) "the need for disclosure is greater than the need for continued secrecy," and (3) the "request is structured to cover only material so needed."[43] The moving party must demonstrate a

---

[39] *United States v. Strouse*, 286 F.3d 767, 771 (5th Cir. 2002).
[40] *See United States v. Williams*, 504 U.S. 36, 46 (1992) ("[T]he supervisory power can be used to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions." (internal quotation marks omitted)).
[41] *United States v. Welborn*, 849 F.2d 980, 985 (5th Cir. 1988).
[42] *United States v. R. Enters., Inc.*, 498 U.S. 292, 301 (1991) (citing *Mechanik*, 475 U.S. at 75) (internal quotation marks omitted); *Izen v. Catalina*, 256 F.3d 324, 329–30 (5th Cir. 2001) (district court "may properly order release of grand jury materials where a party demonstrates with particularity a 'compelling necessity' for the materials").
[43] *See Douglas Oil*, 441 U.S. at 222.

"particularized" and "compelling" need for the requested materials that outweighs the policy of grand jury secrecy.[44]

Where, as in this case, a defendant complains of grand jury errors prior to the conclusion of trial, "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations."[45] Thus, to prevail, Defendants must demonstrate two elements: a violation and resulting prejudice. As set forth more fully below, Defendants cannot establish either.

Defendants have not pointed to any violations and have offered no evidence that the release of the grand jury transcripts and materials is required to avoid any injustice. Defendants' contention that the Government erroneously instructed the grand jury on the meaning of "homebound" is entirely conjecture. Defendants' assumption of what specific instructions "presumably," "upon information and belief," or "inevitably made their way" to the grand jury is not sufficient "proof" of a particularized need for the release of grand jury materials. "[U]nspecific allegations of need or mere speculation are not adequate" to show particularized need for disclosure of grand jury transcripts.[46]

---

[44] *See id.* at 222–27; *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959); *Miramontez*, 995 F.2d at 59; *see also In re Grand Jury Testimony*, 832 F.2d at 62; *United States v. R. Enters., Inc.*, 498 U.S. 292, 301 (1991) (the presumption of regularity "generally may be dispelled only upon particularized proof of irregularities in the grand jury process." (citing *Mechanik*, 475 U.S. at 75) (internal quotation marks omitted)).

[45] *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986)).

[46] *See Anilao v. Spota*, 918 F. Supp. 2d 157, 174 (E.D.N.Y. 2013); *see also United States v. Chamberlin*, No. 09-6169, 2010 WL 1904500, at *4 (W.D.N.Y. May 12, 2010) (holding that the "speculative assertion that the grand jury was improperly instructed" is "wholly insufficient to overcome the rule of secrecy in grand jury proceedings"); *United States v. Stein*, 429 F. Supp. 2d 633, 639–40 (S.D.N.Y. 2006) (mere "concern[]" that the government failed to properly instruct the grand jury on the applicable law, even if based on public statements made by government attorneys, is "not sufficient to overcome the 'presumption of regularity' afforded to grand jury proceedings").

Other than simply reiterating their argument that the definition of homebound as stated in the Indictment is erroneous, Defendants only speculate as to what might have occurred during the proceedings before the grand jury by pointing to transcripts from the trial of Ricard, their alleged co-conspirator.[47] According to Defendants, during that trial, the Government's witnesses misstated the definition of "homebound," and, as a result, the definition must have been misstated to the jury.[48] A witness's testimony in a separate matter does not give rise to an inference that the Government improperly instructed the grand jury in the instant case.[49] Moreover, as the Government points out in its opposition, "unlike the Defendants, Ms. Ricard was not charged with falsely certifying that patients qualified for in-home services. Instead, she was charged with crimes relating to her receipt of kickbacks, identity theft, and making false statements to federal agents."[50] Thus, the definition of "homebound" was not material to the Government's case against Ms. Ricard, and the testimony at that trial has no bearing on the issue before this Court.

Defendants have failed to carry their burden of demonstrating a particularized need for the disclosure and have neither identified an error nor any resulting undue prejudice. Disclosure of the proceedings before the grand jury is not needed to avoid a possible injustice.[51] As a result, the Court declines to exercise its supervisory power to disclose the grand jury proceedings in this case.[52]

---

[47] R. Doc. 34-1 at 10–11.
[48] *Id.* at 9–10.
[49] *United States v. Stein*, 429 F. Supp. 2d 633, 639–40 (S.D.N.Y. 2006) ("concern[]" that the government failed properly instruct the grand jury on the applicable law, even if based on public statements made by the government's attorneys about the theory of the case, is not "sufficient to overcome the 'presumption of regularity' afforded to grand jury proceedings.").
[50] R. Doc. 42 at 14.
[51] *See Douglas Oil*, 441 U.S. at 222.
[52] *See United States v. McKenzie*, 678 F.2d 629, 632–33 (5th Cir. 1982).

## CONCLUSION

Accordingly;

**IT IS ORDERED** that Defendants Dr. Muhammad Kaleem Arshad, Dr. Padmini Nagaraj, and Mr. Joseph A. Haynes' motion to dismiss the Indictment and to release the grand jury testimony and materials be and hereby is **DENIED**.[53]

**New Orleans, Louisiana on this 2nd day of July, 2018.**

                         _____
                                **SUSIE MORGAN**
                            **U.S. DISTRICT COURT JUDGE**

---

[53] R. Docs. 34, 43, 55.